FILED
Clerk
District Court

JUL 22 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. |
| | ) | CR 08-00020 |
| Plaintiff, | ) | INDICTMENT |
| | ) | |
| v. | ) | Title 18, U.S.C. § 371--Conspiracy (Ct. 1); |
| | ) | Title 18, U.S.C. § 1343--Wire Fraud (Ct. 2); |
| TIMOTHY P. VILLAGOMEZ, | ) | Title 18, U.S.C. § 666--Theft Concerning |
| ANTHONY C. GUERRERO, | ) | Federal Funds (Ct. 3); Title 18, U.S.C. § 2-- |
| JOAQUINA V. SANTOS, and | ) | Aiding and Abetting. |
| JAMES A. SANTOS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

THE GRAND JURY CHARGES THAT:

## COUNT ONE

### CONSPIRACY TO DEFRAUD THE UNITED STATES

#### Introduction

1. From in or about February 1998 and continuing to in or about July 2008, the defendants Timothy P. VILLAGOMEZ, Anthony C. GUERRERO, Joaquina V. SANTOS, and James A. SANTOS, within the District of the Northern Mariana Islands and elsewhere, together with others known and unknown to the Grand Jury, unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States to wit: Wire Fraud, Title 18, United States Code, Section 1343; and Theft Concerning Federal Funds, Title 18, United States Code, Section 666, all in violation of Title 18, United States Code, Section 371.

Participants in the Scheme

2. At all times material to the Indictment, the Commonwealth Utilities Corporation ("CUC") was a publicly-owned, semi-autonomous agency responsible for providing power and water to the people of the Commonwealth of the Northern Mariana Islands ("CNMI"). During all one year periods beginning January 1, 1998 through January 31, 2007, the CUC received more than Ten Thousand Dollars ($10,000.00) in federal money.

3. At all times material to the Indictment, ISLAS Micronesia Sales ("ISLAS") was a company licensed by the Commonwealth Department of Finance to engage in business in the CNMI. Defendant James A. SANTOS owned and operated ISLAS. The business telephone number of ISLAS was 670-288-1178 and the fax number was 670-288-1168. These numbers are also listed as the private numbers of defendant James A. SANTOS.

4. At all times material to the Indictment, Blue Pacific was a company licensed by the Commonwealth Department of Finance to engage in the business of "General Retail Merchandising" in the CNMI. Defendant Joaquina V. SANTOS owns Blue Pacific and defendant James A. SANTOS was identified as an authorized agent for Blue Pacific. The business telephone numbers of Blue Pacific are 670-288-1178 and 670-285-1799. The number 670-288-1178 is also listed as the private telephone number of defendant James A. SANTOS.

5. At all times material to the Indictment, Timothy P. VILLAGOMEZ was a United States citizen residing in the CNMI. From April 1994 to January 2002, Timothy P. VILLAGOMEZ served as Executive Director of the CUC. On January 9, 2006, Timothy P. VILLAGOMEZ was sworn in as Lieutenant Governor of the CNMI, a position that he continues to hold as of the date of this Indictment. Timothy P. VILLAGOMEZ is the brother of co-

defendant Joaquina V. SANTOS, and brother-in-law of co-defendant James A. SANTOS.

6. At all times material to the Indictment, James A. SANTOS was a United States citizen residing in the CNMI. On or about July 21, 2006, the CNMI Senate confirmed James A. SANTOS as Secretary of Commerce of the CNMI, a position that he continues to hold as of the date of this Indictment. James A. SANTOS is the spouse of co-defendant Joaquina V. SANTOS, and brother-in-law of co-defendant Timothy P. VILLAGOMEZ.

7. At all times material to the Indictment, Joaquina V. SANTOS was a United States citizen residing in the CNMI. Joaquina V. SANTOS is the sister of co-defendant Timothy P. VILLAGOMEZ, and the spouse of co-defendant James A. SANTOS.

8. At all times material to the Indictment, Anthony C. GUERRERO, was a United States citizen residing in the CNMI. On or about September 6, 2006, upon nomination by then-acting Governor Timothy P. VILLAGOMEZ, Anthony C. GUERRERO was confirmed as Executive Director of the CUC, a position which he held until on or about May 4, 2008.

## OBJECTS OF THE CONSPIRACY

**The 1998-2000 Transactions**

9. Beginning on or about February 2, 1998, defendants Timothy P. VILLAGOMEZ, and James A. SANTOS, agreed upon and initiated a scheme whereby Timothy P. VILLAGOMEZ, acting in his capacity as Executive Director, caused the CUC to enter into agreements to purchase a product called "Rydlyme" from ISLAS, a company owned and operated by defendant James A. SANTOS.

10. The agreements provided a benefit to defendant James A. SANTOS of Two Hundred Eighty Six Thousand, One Hundred Twenty-Five Dollars ($286,125.00) from the CUC.

The cost associated with the agreements was approximately Sixty Eighty Thousand, Five Hundred Seventy Dollars ($68,570.00). The agreements were less than arm's-length and were intended to circumvent numerous CNMI procurement policies and regulations, as well as conflict-of-interest statutes.

**The 2007 Transaction**

11.     In or about August 2007, defendants Timothy P. VILLAGOMEZ and James A. SANTOS, joined with Joaquina V. SANTOS, to execute the objects of the conspiracy again, this time enlisting the assistance of defendant Anthony C. GUERRERO and several unindicted co-conspirators.

12.     Defendant Timothy P. VILLAGOMEZ, now serving as Lieutenant Governor and designated by Governor Benigno Fitial to oversee CUC operations on or about March 20, 2006, agreed with defendants Joaquina V. SANTOS and James A. SANTOS to cause the CUC to enter into a new contract to purchase Rydlyme from Blue Pacific. Defendant Timothy P. VILLAGOMEZ, acting under color of his official position, counseled, commanded, induced and procured defendant Anthony C. GUERRERO and an unindicted co-conspirator to initiate and facilitate, approve and fulfill, the agreement to purchase Rydlyme on behalf of CUC.

13.     Said agreement called for a payment of One Hundred Twenty Thousand Dollars ($120,000) to Blue Pacific. The cost associated with the agreement was Thirty Thousand, Six Hundred and Seventy-Six Dollars ($30,676.00). The agreement was less than arm's-length and was designed to circumvent numerous CNMI procurement policies and regulations, as well as conflict-of-interest statutes.

14.     Based on the CUC's experience with the 1998-2000 purchases, which included

damage to the CUC's equipment, and resulted in the limited use of Rydlyme only for other purposes, such as cleaning tools, cement floors, and plumbing systems. Most of the Rydlyme was disposed of or put in storage.

15. Of the eight thousand, one hundred and seventy-five gallons of Rydlyme from the 1998-2000 purchases not used, at least one thousand, four hundred and eighty-five gallons remain in storage on the island of Rota. Notwithstanding the presence of Rydlyme on Rota, the sole-source, emergency purchase of an additional three thousand gallons of Rydlyme in 2007 was justified on the basis that it was urgently needed.

16. As of the date of this Indictment, approximately three hundred and fifty gallons of the three thousand gallons of Rydlyme acquired in the 2007 purchase has been used by CUC.

Overt Acts

17. The overt acts taken in furtherance of the scheme include but are not limited to:

a. On or about February 6, 1998, defendant James A. SANTOS sent by fax to defendant Timothy P. VILLAGOMEZ, a letter on behalf of ISLAS, quoting a price of Thirty Five Dollars ($35.00) per gallon for three hundred and seventy-five gallons of Rydlyme.

b. On or about April 1, 1998, defendant Timothy P. VILLAGOMEZ approved CUC Purchase Order 98-1267, authorizing CUC's purchase of three hundred and seventy-five gallons of Rydlyme for a price of Thirteen Thousand, One Hundred and Twenty-Five Dollars ($13,125.00).

c. On or about April 15, 1998, defendant Timothy P. VILLAGOMEZ signed Check number 37848, drawn upon CUC's Operations Fund account and making payment to

ISLAS in the amount of Thirteen Thousand, One Hundred and Twenty-Five Dollars ($13,125.00).

     d.     On or about April 24, 1998, defendant James A. SANTOS sent the CUC Procurement and Supply Office a letter on behalf of ISLAS, quoting a price of Seventy Thousand Dollars ($70,000.00) for two thousand gallons of Rydlyme.

     e.     On or about May 1, 1998, defendant Timothy P. VILLAGOMEZ approved: (1) CUC Purchase Order 98-1419, authorizing CUC's purchase of one thousand gallons of Rydlyme for a price of Thirty-Five Thousand Dollars ($35,000.00) for the island of Rota; and (2) CUC Purchase Order 98-1430, authorizing CUC's purchase of one thousand gallons of Rydlyme for a price of Thirty-Five Thousand Dollars ($35,000) for the island of Tinian.

     f.     On or about June 26, 1998, defendant Timothy P. VILLAGOMEZ signed Check number 38720, drawn upon CUC's Operations Fund account and making payment to ISLAS in the amount of One Hundred and One Thousand, Three Hundred and Fifty Dollars ($101,350.00). Seventy Thousand ($70,000.00) was payment for Purchase Orders 98-1419 and 98-1430.

     g.     On or about July 13, 1998, defendant James A. SANTOS sent the CUC Procurement and Supply Section a letter on behalf of ISLAS, quoting a price of Thirty-Five Dollars ($35.00) per gallon of Rydlyme.

     h.     On or about August 3, 1998, defendant Timothy P. VILLAGOMEZ

approved: (1) CUC Purchase Order 98-2140, authorizing CUC's purchase of one thousand gallons of Rydlyme for a price of Thirty-Five Thousand Dollars ($35,000.00) for the island of Saipan; (2) CUC Purchase Order 98-2144, authorizing CUC's purchase of one thousand gallons of Rydlyme for a price of Thirty-Five Thousand Dollars ($35,000.00) for the island of Rota; and (3) CUC Purchase Order 98-2147, authorizing CUC's purchase of one thousand gallons of Rydlyme for a price of Thirty-Five Thousand Dollars ($35,000.00) for the island of Tinian.

      i.      On or about September 14, 1998, defendant Timothy P. VILLAGOMEZ signed Check number 39727, drawn upon CUC's Operations Fund account and making payment to ISLAS in the amount of One Hundred and Five Thousand Dollars ($105,000.00) in payment for Purchase Orders 98-2140, 98-2144 and 98-2147.

      j.      On or about June 22, 1999, defendant Timothy P. VILLAGOMEZ approved CUC Purchase Order 99-2143, authorizing CUC's purchase of one thousand, four hundred gallons of Rydlyme for a price of Forty-Nine Thousand Dollars ($49,000.00) for the island of Saipan.

      k.      On or about December 28, 1999, defendant James A. SANTOS sent the CUC Procurement Division a letter on behalf of ISLAS, quoting a price of Thirty-Five Dollars ($35.00) per gallon for two thousand gallons of Rydlyme.

      l.      On or about January 4, 2000, defendant Timothy P. VILLAGOMEZ approved CUC Purchase Order 00-0759, authorizing CUC's purchase of one thousand four hundred gallons of Rydlyme for a price of Forty-Nine Thousand Dollars ($49,000.00).

m.  On or about August 7, 2007, defendant James A. SANTOS sent an e-mail message to Apex Engineering Products Corporation ("Apex"), requesting a quote for Rydlyme.

n.  On or about August 23, 2007, defendant Joaquina V. SANTOS obtained a CNMI business license for Blue Pacific from the CNMI Department of Finance.

o.  On or about August 27, 2007, defendant Joaquina V. SANTOS sent an unsolicited letter on Blue Pacific letterhead to CUC's Procurement Manager; it quoted a price of Thirty-Five Dollars ($35.00) per gallon of Rydlyme for orders over three thousand gallons, and Forty Dollars ($40.00) per gallon of Rydlyme under three thousand gallons.

p.  On or about September 11, 2007, an employee of CUC drafted a Request Voucher for ten drums (550 gallons) of Rydlyme. On or about September 12, 2007, an unindicted co-conspirator ordered another CUC employee to increase that amount to twenty drums (1,100 gallons).

q.  On or about September 18, 2007, defendant James A. SANTOS sent an email to Apex stating his intent to order two thousand, nine hundred and seventy gallons of Rydlyme "by early next week." He also indicated his intent to wire transfer payment "this weekend."

r.  On or about September 25, 2007, an unindicted co-conspirator amended the Request Voucher, increasing the amount of Rydlyme requested to sixty drums (3,300 gallons).

s.  On or about September 28, 2007, defendant James A. SANTOS caused to be wire transferred the amount of Thirty Thousand, Six Hundred and Seventy-Six Dollars ($30,676.00) from the Northern Mariana Islands to a bank in Aurora, Illinois.

t.  On or about October 1, 2007, an unindicted co-conspirator approved Requisition Voucher number PGS 08-001 for the emergency procurement of sixty drums of Rydlyme.

u.  On or about October 3, 2007 defendant James A. SANTOS, acting on behalf of Blue Pacific, ordered nine totes (2,970 gallons) of Rydlyme from Apex for a total cost, including delivery, of Thirty Thousand, Six Hundred and Seventy-Six Dollars ($30,676.00).

v.  On or about October 18, 2007, an unindicted co-conspirator sent a justification memo for the sole source purchase of Rydlyme to defendant Anthony C. GUERRERO, who approved the sole source purchase on October 22, 2007.

w.  On or about October 26, 2007, defendant Joaquina V. SANTOS sent a letter to the CUC Procurement Manager confirming the purchase of three thousand gallons of Rydlyme for a total cost of One Hundred and Twenty Thousand Dollars ($120,000.00), indicating that the shipment was en route.

x.  On or about November 16, 2007, defendant Anthony C. GUERRERO signed and had sent via facsimile a letter to defendant Joaquina V. SANTOS notifying Blue Pacific that CUC would proceed with Contract number CUC-PG-08-C004, relating to the purchase of Rydlyme.

y. On or about November 16, 2007, defendants Anthony C. GUERRERO and Joaquina V. SANTOS, along with an unindicted co-conspirator, signed Contract number CUC-PG-08-C004.

z. On or about December 4, 2007, defendant Anthony C. GUERRERO authorized payment of Fifty Thousand Dollars ($50,000.00) to Blue Pacific.

aa. On or about December 6, 2007, defendant Joaquina V. SANTOS sent a letter to CUC authorizing Charlene M. TENORIO to receive CUC's payment check on behalf of Blue Pacific.

bb. On or about January 15, 2008, defendant Anthony C. GUERRERO authorized payment of Ten Thousand Dollars ($10,000.00) to Blue Pacific.

cc. On multiple occasions throughout the conspiracy, defendant Timothy P. VILLAGOMEZ called defendant Anthony C. GUERRERO, as well as other CUC officers and employees seeking information on the status of the transaction, acts that pressured CUC's officers into making the transaction occur. On at least one occasion, defendant Timothy P. VILLAGOMEZ ordered a CUC employee to "pay my sister".

## COUNT TWO
### WIRE FRAUD

18. The Grand Jury realleges, adopts and incorporates by reference herein, the allegations contained in paragraphs two, four through eight, and eleven through sixteen as if fully set forth herein.

19.     On or about September 28, 2007, having devised and intending to devise the foregoing scheme and artifice to defraud and for obtaining money and property by means of false pretenses, representations, and promises, and to deprive other persons of the intangible right of honest services, defendants Timothy P. VILLAGOMEZ, Anthony C. GUERRERO, Joaquina V. SANTOS, and James A. SANTOS, within the District of the Northern Mariana Islands and elsewhere, for the purpose of executing such scheme and artifice and attempting to do so, caused to be transmitted, certain signals and sounds by means of wire or radio communications in interstate and foreign commerce, to wit: a wire transaction in the amount of Thirty Thousand, Six Hundred and Seventy-Six Dollars ($30,676.00), that required electronic communications between the CNMI and Aurora, Illinois, in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

**COUNT THREE**

<u>THEFT CONCERNING FEDERAL FUNDS</u>

20.     The Grand Jury realleges, adopts and incorporates by reference herein, the allegations contained in paragraphs two, four through eight, and eleven through sixteen as if fully set forth herein.

21.     From in or about August 2007 and continuing to in or about January 2008, defendants Timothy P. VILLAGOMEZ, Anthony C. GUERRERO, and James A. SANTOS, acting as agents of a local government or an agency thereof, aided and abetted by defendant Joaquina V. SANTOS, within the District of the Northern Mariana Islands and elsewhere, did embezzle, steal, obtain by fraud, knowingly convert, without authority, to the use of persons other than the rightful owners, and intentionally misapply, without authority, property that is

valued at more than Five Thousand Dollars ($5,000.00), and was owned by and under the care, custody and control of a government and agency that received benefits under a Federal program in excess of Ten Thousand Dollars ($10,000.00) during a one-year period, to wit: by using their official positions within the CNMI government to promote and engage in the transaction described in paragraphs eleven through sixteen above, in violation of Title 18, United States Code, Section 666, and 2.

Dated this ___ day of July 2008.

A TRUE BILL.

_____
Foreperson

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
ERIC S. O'MALLEY
Assistant United States Attorney

Approved By:

_____
JEFFREY J. STRAND
First Assistant United States Attorney